# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

DEC 2 0 2018

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 18-MJ-7193
)
an SD Card, a SanDisk 2GB Micro SD more particularly )
described in Attachment A )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

an SD Card, a SanDisk 2GB Micro SD card more particularly described in Attachment A

located in the     Central    District of     Illinois    , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:2250 | Failure to Register as Sex Offender |
| 18:2252A | Possession of Child Pornography |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT OF DUSM THOMAS GREINER.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Thomas Greiner
*Applicant's signature*

THOMAS GREINER, Deputy U.S. Marshal
*Printed name and title*

Sworn to before me and signed in my presence.

s/Eric I Long

Date:    12/20/2018
*Judge's signature*

City and state:    Urbana, Illinois          ERIC I. LONG, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Thomas Greiner, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Deputy with the United States Marshals Service and have been with the Service for eight years. I graduated from the six-week, United States Marshals Academy, and the thirteen-week, Criminal Investigators Program at the Federal Law Enforcement Training Center in 2011. I am assigned to the Sex Offender Investigations Branch of the United States Marshals Service. One of my responsibilities is to investigate crimes involving individuals who are convicted sex offenders and have failed to register as required by Title 18 United States Code, Section 2250(a), also known as the Adam Walsh Child Protection and Safety Act of 2006.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

1. The property to be searched is an SD Card, a SanDisk 2GB Micro SD card with the letters SD-CO2G on the front of the card, hereinafter the "Device." The Device is currently located at the U.S. Federal Probation Office, 201 South Vine Street, Urbana Illinois 61802. The applied-for warrant would authorize the seizure and forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATUTORY AUTHORITY

2. This investigation concerns alleged violations of 18 U.S.C. § 2250, and 2252A, relating to material involving the sexual exploitation of minors.

   a. 18 U.S.C. § 2250(a) prohibits sex offenders, as defined by the Sex Offender Registration and Notification Act by reason of a conviction under Federal law ... from knowingly failing to register or update a registration as required by the Sex Offender Registration and Notification Act;

   b. 18 U.S.C. § 2250(d) increases the penalty from up to 10 years imprisonment, to no less than five years up to 30 years imprisonment, if a non-compliant sex offender commits a crime of violence[1], including possession, receipt, or distribution of child pornography. Further, this crime of violence shall be in addition and consecutive to any violation for failure to register.

---

[1] The term "crime of violence" means— (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 77, 109A, 110, or 117. 18 U.S.C. § 3156(a)(4).

2

c. 18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer.

d. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

## PROBABLE CAUSE

3. The Peoria Grand Jury indicted Benny Joe LOVELESS, Jr. on February 16, 2005, with Conspiracy to Produce Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), in criminal case 05-CR-10013. This case involved an investigation in or about September 2004, which revealed that LOVELESS conspired with two other co-conspirators to engage in various types of sex acts with a 13 year old minor female, including genital-genital and oral-genital intercourse. While engaging in said sexual activity, LOVELESS caused and directed the production of visual depictions of sexual conduct using a digital camera to obtain photographs of the minor victim. LOVELESS further produced the visual depictions by transferring the digital photographs to a computer for storage and archival. I know based on my training and experience that currently, nearly all cellular telephones have digital cameras and can be used to store digital files, and are therefore used in much the same manner as digital cameras and computer storage devices were used in 2004/2005.

4.     On August 10, 2006, United States District Judge Michael M. Mihm sentenced LOVELESS to 180 months imprisonment and a lifetime term of supervised release. As a result of his conviction, LOVELESS was required to register as a sex offender for a period of 25 years[2], including during the relevant time period, November 2018. Judge Mihm further ordered that LOVELESS must install filtering software on any computer that he possessed, as a special condition of his supervised release term.

5.     LOVELESS began his supervision term on or about June 1, 2018. According to U.S. Probation Officer Michael Bice, LOVELESS indicated he would reside at his mother's residence in the 500 block of Walnut Street in Watseka, Illinois. On June 5, 2018, LOVELESS was reminded of the specific terms and conditions of his supervised release and signed an acknowledgement that he would install filtering software on any internet capable device and be subject to a search of such Device. Specifically, the relevant conditions state:

> SPECIAL CONDITION NO. 4: You shall not receive or transmit child pornography via the Internet nor visit any website, including chat rooms or bulletin boards, containing any pornography, including child pornography. You shall install filtering software on any computer you possess or use which will monitor/block access to sexually oriented web sites. You shall allow the probation officer unannounced access to any computer you possess or use to verify that the filtering software is functional. You shall pay for the cost of the filtering software as directed by the probation officer.

---

[2] LOVELESS is a Tier II offender, having been convicted of production of child pornography. 34 U.S.C. § 20911(3)(B)(iii). Therefore he is required to register for 25 years (excluding any time he was in custody). 34 U.S.C. § 20915(a)(2).

SPECIAL CONDITION NO. 5: You shall allow the probation office to conduct periodic unannounced examinations of your computer equipment and residence, which may include retrieval and copying of all data from your computer to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection.

6. U.S.P.O. Bice reiterated that prior to obtaining any internet capable device, LOVELESS would be required to discuss such acquisition and determine the safety protocol necessary, including the installation filtering software. U.S.P.O. Bice approved LOVELESS to possess and use the ZTE flip phone, which does not have any Internet capability, but did not authorize any other device. U.S.P.O. Bice examined this device periodically at LOVELESS' scheduled visits.

7. On November 8, 2018, during an office visit, U.S.P.O. Bice discovered LOVELESS to be in possession of an unreported internet capable cell phone, specifically an LG model number LG-VS415PP, with no filtering software installed. Pursuant to their search authority, U.S. Probation conducted a forensic examination of this LG cellular device which revealed an unreported phone number, email account (including accounts using the moniker "rugmuncher500"[3]), Facebook messenger, Google handouts, and Textnow messaging applications that LOVELESS had failed to disclose to U.S. Probation. In addition, the LG phone contained images depicting nudity and sexual activity of women stored on the device's micro storage card, the Device.

---

[3] I know based on my training and experience that this term is often associated with sexual activity, specifically oral sex with a female.

5

8.      The Device is currently in the lawful possession of the U.S. Probation Department, pursuant to their search authority. Therefore, while the U.S. Probation Department might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

9.      On November 19, 2018, Sheriff Derek Hagen from the Iroquois County Sheriff's Office conducted a compliance check at LOVELESS' reported address on Walnut Street, in Watseka, Illinois. LOVELESS' mother, Clara Marcum, advised that LOVELESS had not stayed at that residence for at least 30 days, possibly longer. On November 19, 2018, Sherriff Hagen, along with Watseka Police Officers, located and arrested LOVELESS at an apartment on the 200 block of North 5th Street, in Watseka, Illinois, for failure to register as a sex offender in violation of Illinois law.

10.     During a search of LOVELESS subsequent to his arrest, Watseka officers found two cells phones in LOVELESS' possession, an older model flip phone (the ZTE phone) and another Internet capable device Samsung smart phone. U.S.P.O. Bice was not aware and did not authorize the Samsung device. Sherriff Hagen brought these phones to U.S.P.O. Bice on November 28, 2018.

11.     On December 6, 2018, United States Magistrate Judge Eric I. Long authorized the search of the ZTE phone and the Samsung smart phone, 18-MJ-7183.

12.     On December 7, 2018, Patrick Simons, an officer with the Champaign Police Department's High Tech Crimes Division, executed the warrant and began

examining the ZTE phone and the Samsung smart phone. Detective Simons stated that during his forensic examination of the Samsung Smart Phone and ZTE Flip Phone, he could locate some photos and video fragments, but the SD Card was missing from the phone. The SD Card from the LG phone, previously possessed by LOVELESS and seized by U.S.P.O. Bice can be used to move data from one phone to the other.

13. The Device is currently in storage at the U.S. Probation Office, 201 South Vine Street, Urbana Illinois. In my training and experience, I know that the Device has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the U.S. Probation Office.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

14. Based on my training and experience and the training and experience of other law enforcement officers that I have consulted with, I know that the following traits and characteristics are generally found to exist and be true in cases involving individuals who collect child pornography:

   a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

   b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of

child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage Device, or merely on scraps of paper.

f. The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in the privacy of their homes or other secure location.

15. Possessing multiple unmonitored Devices in violation of the terms of his supervised release, and using those Devices to engage in social media, messaging

applications, and retaining pornographic images are all activities consistent with a collector of child pornography. In addition, LOVELESS possessed and used these unauthorized Devices while residing in a residence with a minor child, unregistered, in violation of state and federal sex offender registration laws.

### TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also

9

  include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

  c. **IP Address:** An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  d. **Internet:** The Internet is a global network of computers and other electronic Device that communicate with each other. Due to the structure of the Internet, connections between Device on the Internet often cross state and international borders, even when the Device communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a digital storage device for a Digital Camera and Wireless telephone. In my training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

   d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that

establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

   21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ

techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

s/Thomas Greiner

Thomas Greiner, Deputy U.S. Marshal
United States Marshal Service

Subscribed and sworn to before me
on December 20, 2018:
s/Eric I Long

ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is an SD card, a SanDisk 2GB Micro SD card with the letters SD-CO2G on the front of the card, hereinafter the "Device." The Device is currently located at the U.S. Federal Probation Office, 201 South Vine Street, Urbana Illinois 61802.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of **18 U.S.C. § 2250 and 18 U.S.C. § 2252A** and involve Benny Joe LOVELESS, Jr. since 06/01/2018, including:

    a. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 2250 and 2252A and involve Benny Joe Loveless, Jr., including:

        1. Minor females
        2. Travel to and from Illinois, or within Illinois
        3. Sexual conduct or activity
        4. Visual depictions of sexual conduct or activity involving adults or minors or that appear to involve minors
        5. Any text messages, email messages, or other communication involving minors or that appear to solicit minors to engage in sexual activity.

    b. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    c. Records evidencing the use of the Internet Protocol address to communicate with any minors, or websites involving in sharing or trading child pornography including:

    d. records of Internet Protocol addresses used;

    e. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.